```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


KETTI VOISIN, ET AL.                                CIVIL ACTION

v.                                                  NO. 15-571

AXXIS DRILLING, INC. AND                            SECTION "F"
TRINIDAD DRILLING, LP
```

ORDER AND REASONS

Before the Court is the defendants' motion for summary judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This putative class action lawsuit is brought on behalf of a group of Axxis Drilling, Inc.'s former employees who were laid off between December of 2014 and February of 2015 in response to a downturn in oil and gas productivity. The plaintiffs' claims arise under the Worker Adjustment and Retraining Notification Act of 1988 (the WARN Act), which requires covered employers to give notice to their employees before implementing substantial layoffs. The plaintiffs claim they did not receive the required notice.

Until February of 2015, Axxis Drilling, Inc. operated a fleet of five floating drilling rigs in the territorial waters of Louisiana and Texas. While the rigs were not self-propelled, they were periodically moved by boat to new drilling sites. Each rig had between 24 and 43 employees. A rig manager supervised the employees

1

on each rig and oversaw daily operations. The rig employees worked rotating shifts of seven days on duty and seven days off duty. While on duty, they worked, ate, slept, and lived on the rig. At the beginning and end of their shifts, rig employees were transported to and from the rig by a boat that traveled between the rig and a designated dock facility. Rig employees were responsible for getting themselves to and from the designated dock and typically drove their personal vehicles between their homes and the dock.

Axxis also employed 20 people at an office located along the Intracoastal Waterway in Houma, Louisiana. The Axxis office handled billings and payments, payroll for all employees, and human resource functions. Axxis hired new personnel and conducted training sessions for all employees at its office. Axxis' operations manager and superintendent worked out of the office but routinely visited with each rig. The rigs worked independently from each other, but each was in daily communication with the managers at the Axxis office. Each rig produced its own daily and weekly reports, which it relayed to the Axxis office. Rig managers contacted the office personnel when they needed to order parts or have equipment sent to the barges. In short, the office functioned as Axxis' headquarters for its drilling operations.

Adjacent to Axxis' office were two warehouses and roughly 300 feet of dock space. Axxis used the warehouses to store supplies and

spare parts for the rigs. Occasionally, when the drilling rigs were between jobs, they were "stacked" at the dock adjacent to the Axxis office. At most, two rigs were stacked at a time for repairs and maintenance or to prepare to move to a new location. While they were stacked at the dock, rig employees continued to work their normal shifts, living and sleeping on the rigs. Lester Guilbeau, Axxis' operations manager, testified that stacked rigs could remain at the dock from two weeks to a month before being moved to a new location. While stacked, rig employees parked at the Axxis office and could walk back and forth from the rig to the office. When Axxis laid off 101 employees in February of 2015, two of the fully-staffed rigs were stacked at the Axxis dock.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); FED. R. CIV. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

The WARN Act requires employers who have 100 or more full-time employees to provide affected employees with a 60-day notice before ordering a plant closing or a mass layoff. 29 U.S.C. § 2102. The Act defines "plant closing" as the permanent or temporary shutdown

4

of a "single site of employment" that results in 50 or more employees losing employment during any 30-day period. 29 U.S.C. § 2101(a)(2). A "mass layoff" is a reduction in force which causes 50 or more employees at a "single site of employment," who comprise at least one third of the total employees at that site, to lose employment for any 30-day period. 29 U.S.C. § 2101(a)(3). An employer who fails to give the required notice is liable to its employees for their average salaries and benefits for each day of violation. 29 U.S.C. 2104(a)(1). The outcome of this case turns on the meaning of "single site of employment."

The Act does not define "single site of employment," but the Department of Labor has adopted regulations that offer guidance. The parties identify the following:

> (1) A single site of employment can refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.
>
> (3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.
>
> (4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.

>(6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.
>
>(8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

29 CFR 639.3(i).

The Fifth Circuit instructs that "separate facilities are only to be treated as a single site of employment if all three factors identified in the regulations are met, namely: 1) the separate facilities are in 'reasonable geographic proximity of one another'; 2) they are 'used for the same purpose'; 3) and they 'share the same staff and equipment.'" <u>Viator v. Delchamps Inc.</u>, 109 F.3d 1124, 1127 (5 Cir. 1997).

### III.

The sole question before the Court is whether Axxis' five drilling rigs together with its Houma office constitute a "single site of employment" under the WARN Act. If the office and each rig are separate sites, the plaintiffs' claims fail because Axxis did not lay off 50 employees from any individual site. The plaintiffs contend that the Axxis office and the adjacent dock and warehouses

comprise a single site of employment under subparts 1 and 3 of the regulations. Because the dock is a part of the Axxis office, the plaintiffs surmise that, when a rig is stacked at the dock, it too becomes part of the single site. The Court disagrees.

The plaintiffs urge the Court to find that the rigs and the Axxis office form a single site of employment because they are occasionally in close proximity to one another. The plaintiffs submit evidence showing that at least one rig was stacked at the dock in Houma for 297 days in 2014. Yet, geographic proximity is only one of three essential factors for separate facilities to be treated as a single site of employment. The plaintiffs fail to satisfy the remaining factors.

Plaintiffs offer testimony of the operations manager, Lester Guilbeau, in which he was asked the following series of questions:

> Q. So on the occasions when rigs were tied up in the back of the shop in Houma, and whether they stayed two weeks or two months, would Axxis still keep the crews employed and have them come to the rigs and do maintenance work and keep everything running?
>
> A. Yes.
>
> Q. And so for those periods of time, the employees would actually drive to the office in Houma, park their cars, and go get on the rig?
>
> A. Yes.
>
> Q. And they would eat and sleep and stay on the rig while it's tied up to the dock in Houma?

    A.    Yes.

This testimony confirms that the rigs maintained their independent operations even while stacked at the Houma office. The rig facilities and the Axxis office were not "used for the same purpose." Nor did the office "share the same staff and equipment" with the rigs. The rigs were separate facilities that functioned independently from each other and the office, and each rig had its own employees who reported for duty to wherever the rig was located.

    Alternatively, the plaintiffs invoke subpart (6) of the regulations, which applies to employees whose primary duties require travel. Under the regulations, the single site of employment for such employees is either: 1) the site of their home base; 2) the site from where their work is assigned; or 3) the site where they report to work.

    The plaintiffs rely on the Sixth Circuit case, <u>Wiltz v. M/G Transport Services</u>, 128 F.3d 957, 961 (6 Cir. 1997). There, the court held that a fleet of towboats used to transport barges by river from New Orleans to Pittsburgh were all part of a single site of employment based at their home office in Kentucky. The Sixth Circuit found that "towboats are like planes, buses, and railroads and all are not more than tools of 'workers whose primary duties require travel from point to point.'" <u>Id.</u> The court reasoned that

subpart (6) of the regulations applied because, like railroad workers, bus drivers, and salesman, the towboat operators used moving vehicles to carry out the business of their employer, i.e., moving cargo for customers. Id. at 961-62. The facts on this record are distinguishable.

Unlike planes, buses, trains, and towboats, the purpose of a drilling rig is not to move people or cargo from point to point. Axxis' rigs were not even self-propelled. The rig employees only traveled to and from the oil rigs. They reported to their assigned rig for their shifts and drove their vehicles from the designated dock to their homes when their shifts were over. The rig employees only reported for work at the Houma office if their assigned rig was temporarily stacked there. Even then, the rig manager assigned work to the rig employees, all of whom continued to live and sleep on the rig. While the rig managers and drillers communicated frequently with the operations manager at the Houma office, the evidence shows that daily work assignments for the rig employees were delegated onboard the rig. Subpart (6) of the regulations does not govern the plaintiffs' claims. There are no material issues of fact in dispute, in this record.

Each Axxis rig was a "single site of employment" under the WARN Act. Because Axxis did not lay off 50 employees from any single site of employment, the plaintiffs' claims fail.

9

Accordingly, the defendants' motion for summary judgment is hereby GRANTED.

New Orleans, Louisiana, October 21, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE